**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re:                                        Case No. 21-11269-JKS

NLG, LLC                                      Chapter 7
        Debtor,

_____/

**MOTION TO CONVERT INVOLUNTARY CHAPTER 7 CASE**
**TO VOLUNTARY CHAPTER 11 CASE**

Chris Kosachuk ("Movant"), *pro se*, hereby files this motion to convert this involuntary

Chapter 7 case to a voluntary Chapter 11 (the "Motion") pursuant to 11 U.S.C. §706(a) and Rule

1017 of the Federal Rules of Bankruptcy Procedure. In support, the Movant states:

**Jurisdiction, Venue and Statutory Predicate**

1.      This Court has jurisdiction to hear this matter and enter a final order granting the

relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are 11 U.S.C. §706(a) and

Rule 1017 of the Federal Rules of Bankruptcy Procedure.

**Background**

4.      The Debtor is a real estate company organized under the laws of the State of

Delaware. The Debtor's operations and primary assets are located in Miami-Dade County, FL.

NLG owned real property located at 6913 Valencia Dr. Fisher Island, FL 33109 (the "Fisher

Island Property"). On or about March 7, 2007, NLG sold the Fisher Island Property to Elizabeth

Hazan ("Hazan") for $5.1 million. As part of the sale of the Fisher Island Property, Hazan

executed a promissory note, secured by a purchase money mortgage duly recorded in Miami-

Dade County, FL. Unfortunately, Hazan defaulted on her first payment mortgage obligation to NLG and a Final Judgment of Foreclosure in the amount of $4,876,654.29 was entered against her.

5.      In order to stop NLG's foreclosure, Hazan filed a voluntary chapter 11 bankruptcy in Miami-Dade County, the night before the Miami-Dade County Clerk was scheduled to auction the Fisher Island Property. NLG's foreclosure has been mired in continuous litigation ever since through vexatious bad faith litigation by Hazan and her army of over 40 different lawyers in multiple state and federal jurisdictions.

6.      Chris Kosachuk, commenced this case by filing an involuntary chapter 7 petition against NLG, LLG, (the "Debtor") on September 24, 2021, (the "Petition Date") alleging that he is owed $5,730,025.00 in order to stop the Miami-Dade County Sheriff from executing on NLG's assets solely for the benefit of another creditor, America Asset Management, LLC ("AAM") with a mere $37,000 claim. AAM is an LLC derivatively owned and controlled by Hazan and represented by Hazan's bankruptcy attorney David W. Langley.

7.      On November 8, 2021, Mr. Kosachuk commenced an adversary proceeding to challenge a sham $5,000,225.00 Judgment by Confession from the case of *9197-5904 Quebec, Inc. v. NLG, LLC*, Case No. 2012-101875. [D.I. 5]. [*See Kosachuk v. 9197-5904 Quebec, Inc. and Selective Advisors Group, LLC*, Case No. 21-ap-51264-JKS] (the "Kosachuk Adversary"). This sham Judgment by Confession has been used successfully to thwart NLG's foreclosure as part of Hazan's vexatious litigation campaign and plunder NLG's only asset.

8.      This Court entered an order for relief on January 7, 2022. [D.I. 10].

9.      This Court appointed Alfred T. Giuliano as Interim Trustee (the "Trustee") on January 7, 2022. [D.I. 12].

10.     On January 27, 2022, the case of *NLG, LLC v. Selective Advisors Group, LLC* was transferred to this Court from the United States District Court in the Southern District of Florida. [*See* Adversary Case No. 22-50086-JKS] (the "NLG Adversary"). This case was filed on April 10, 2018, over four years ago, to challenge the same sham $5 million Judgment by Confession being used to thwart NLG's foreclosure. The case was fully briefed with a pending Motion for Summary Judgment by Plaintiff NLG and a pending Motion to Dismiss filed by Defendant Selective Advisors.

11.     On or about February 4, 2022, the Trustee moved this Court for an order to employ Fox Rothschild LLP as counsel. [D.I. 23].

12.     On February 22, 2022, Fox Rothschild LLP on behalf of the Trustee filed a notice of appearance in the Kosachuk Adversary. [*See* Kosachuk Adversary Case No. 21-51264-JKS D.I. 47].

13.     On March 3, 2022, this Court entered an order approving the employment of Fox Rothschild LLP. [D.I. 39].

14.     On or about March, 7, 2022, attorney Jesse Harris of the Fox Rothschild firm emailed Mr. Kosachuk a stipulation to dismiss the Kosachuk Adversary without prejudice. Mr. Harris claimed that the Trustee wanted to file a new adversary or a plenary action in New York State Court which was laser-focused on the sham $5 million Judgment by Confession and less complicated than the two already filed complaints. It is unclear why he did not want to proceed on the already-filed Kosachuk or NLG Adversaries and wanted to file another complaint.

15.     On March 28, 2022, the Court entered an order which approved the stipulation of dismissal without prejudice. [*See* D.I. 55 from Kosachuk Adversary].

**Page 3 of 14**

16.     On April 22, 2022, the Trustee filed a Motion to Hold the NLG Adversary in abeyance [D.I. 4-NLG Adversary] claiming the Trustee needed "time to investigate the merits of the underlying disputes and determine the best course of action to maximize creditor recovery." It is unclear as to why the Trustee did not want to proceed on a case that was already fully briefed and awaiting adjudication. The NLG Adversary is entirely document-driven so now discovery is unnecessary.

17.     On May 6, 2022, the Trustee filed a Motion For Rule 2004 Examination and Production of Documents from Hazan.  [D.I. 51].  It is unclear what he hopes to learn from such an examination.  Indeed, the Trustee obtained nothing as the examination never occurred.

18.     On May 17, 2022, the Court held a hearing and offered to expedite the Motion for Rule 2004 Examination of Hazan in order to move the case forward and curiously and inexplicably Mr. Harris refused.

19.     On May 18, 2022, the Court entered an order holding the NLG Adversary in abeyance for 90 days.  [*See* D.I. 10 - NLG Adversary].  The abeyance expires on August 16, 2022.

20.     As the Trustee, Alfred T. Giuliano, correctly stated in his Motion for Examination [D.I. 51]: "The Trustee suspects that wrongdoing may have occurred in this case.  Indeed, a thorough review of the relevant documents and prepetition proceedings suggests that certain parties appear to have submitted false filings to several courts, resulting in ill-gotten judgments that extinguished the Debtor's mortgage [and Final Judgment of Foreclosure] on a multi-million-dollar [Fisher Island, FL] property."

21.     More specifically, a sham New York Judgment by Confession in the amount of $5,000,225.00 (the "Sham Judgment") was used to wipe out NLG's legitimate Final Judgment of

Foreclosure in the amount of $4,876,654.29. To add insult to injury, the Florida Bankruptcy Court even found that NLG still owes $123,570.71 pursuant to this Sham Judgment. [*See Amended Complaint* A.D.I. 166 pp. 154-168].

22.     The Trustee Alfred T. Giuliano really described in great detail how this wipe out occurred in a filing before the Florida Southern District Bankruptcy Court [*In Re Hazan* Case No. 16-10389-ACJ - D.I. 1155 – June 6, 2022]:

> •To fund the purchase of the Property, Hazan executed a promissory note in favor of NLG in the original principal amount of $1,275,000, as well as a purchase money mortgage to secure the debt.

> • Shortly after the purchase, Hazan defaulted under the note (as well as a subsequent settlement agreement) for failure to make payment, which resulted in NLG's commencement of enforcement proceedings.

> • NLG prevailed in those enforcement proceedings and obtained a judgment for the amounts owed, about $1,600,000 (the "Scolla [*sic*]Judgment").

> • About one month later, Hazan formed a shell company in Canada, which would be "managed" by Hazan's friend, Richard [Raymond] Houle, in exchange for Hazan's promise to pay Houle $200,000 for his role. The shell company, Quebec, does no business.

> • NLG and Hazan then entered into a second settlement agreement to bring her mortgage arrears current, which Hazan again defaulted under. NLG commenced a foreclosure action.

> • Faced with limited options, Hazan's shell company, Quebec, bought a $40,000 judgment against Kosachuk personally, which was held by Kosachuk's exgirlfriend [*sic*] (the "Lorret Judgment").

> • While the foreclosure action was pending, Quebec quietly domesticated the Lorret Judgment in Pennsylvania. Once domesticated, Quebec sought a charging order against both Kosachuk and NLG, ***which was granted by default. This is the moment when Hazan's scheme came to fruition***.

> • The charging order, drafted by Hazan's counsel, was uniquely wide-sweeping and granted Quebec both economic and management rights in NLG. With this purported authority, Quebec, acting on behalf of itself and NLG, filed the Confession of Judgment -not in the amount of the Lorret Judgment (i.e., $40,000), but in the amount of 5,000,225 for an alleged tort. So, in effect, a $40,000 judgment somehow turned into a judgment of

more than $5,000,000. Quebec then used the confession of judgment to set off the Scolla [sic] Judgment, instead of the Lorret Judgment, and satisfied NLG's mortgage.

• The problem (among many others), however, is that the charging order was quickly **vacated for Quebec's intentional failure to provide notice to NLG.**[1] So any authority to act under the charging order was also vacated.[2]

• Despite the charging order being vacated for a violation of due process, Quebec continued to make representations to various courts that the confession of judgment, including its attachments and sworn affidavits, was truthful and accurate.

• *So here is the rub: Hazan, through her shell companies, bought a $40,000 judgment against Kosachuk, used that $40,000 judgment to obtain a default charging order in knowing violation of due process (as the New York state court ultimately held), took that default charging order and used it to turn a $40,000 judgment against Kosachuk personally into a $5,000,225 judgment against NLG, and then continued to parade the $5,000,225 judgment around various courts even though the underlying authority (i.e., the charging order) was vacated. Hazan is now living in a multimillion-dollar mansion, in the County's most exclusive zip code, without having paid even a fraction of the NLG mortgage.*

23.    What is missing from this synopsis is how Mr. Marzec on behalf of Quebec filed a bad faith involuntary bankruptcy against Movant in the Eastern District of Pennsylvania claiming that Quebec was owed $215,000 on the $40,000 Lorret Judgment. As a result of the bad faith bankruptcy filing, Judge FitzSimon cancelled the indebtedness of the Lorret Judgment *nunc pro tunc.* Judge FitzSimon also awarded Movant over $1.1 million in compensatory and punitive damages none of which has been paid. This FitzSimon Judgment has been registered in the United States District Court for the District of Delaware and a copy of which was attached hereto as Exhibit B to the Motion for Leave [A.D.I. 13]. The FitzSimon Judgment was affirmed

---

[1] The Order vacating the charging order is attached as **Exhibit "A"** to the Motion for Leave [A.D.I. 13] and incorporated by reference herein. In the Order, the court admonishes Quebec [and Mr. Marzec], stating, "Quebec chose not to give notice to NLG despite having had a judgment entered against NLG."

[2] See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) ("A judgment rendered in violation of due process is void . . . .")

by the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit twice.

24.     This entire process described above was orchestrated by Elizabeth Hazan's counsel of record, Darius A. Marzec.  Indeed Mr. Marzec, domesticated the Lorret Judgment in Pennsylvania, misled the Pennsylvania court about who the judgment debtors were; drafted the illegal charging order; obtained it on default by failing to serve Movant or the Debtor, NLG; immediately thereafter drafted the Sham Judgment by Confession;  notarized the signature of Raymond Houle on it; and recorded the Sham Judgment by Confession with the New York County Clerk.  As a result, Ms. Hazan has had a windfall exceeding $9 million at expense of NLG, its creditors and its owner.  To this day Mr. Marzec represents Ms. Hazan and is drafting the pleadings in this case for Ms. Klein to file

25.     On June 7, 2022, the United States of America on behalf of the Internal Revenue Service filed a Motion to Dismiss the bankruptcy of Hazan for failure to maintain plan payments to the IRS (the "IRS Motion to Dismiss").  [*See In Re Hazan* Case No. 16-10389-AJC - D.I. 1157- SDFL Bankruptcy Court].  The IRS Motion to Dismiss disclosed that Debtor Hazan has defaulted on every confirmed plan payment to the IRS since December 12, 2018 with the only payment being made just after confirmation on June 21, 2018.  The IRS Motion to Dismiss was set for hearing on June 30, 2022.

26.     On June 9, 2022, Mr. Kosachuk filed a Motion to Dismiss the bankruptcy of Hazan (the "Kosachuk Motion to Dismiss").  [*See In Re Hazan* Case No. 16-10389-AJC - D.I. 1161- SDFL Bankruptcy Court] which joined and adopted the IRS Motion to Dismiss and detailed all of the other confirmed plan payment defaults, amounting to over 80 individual payment defaults.  The Kosachuk Motion to Dismiss was set for hearing on June 30, 2022.

27.     Mr. Kosachuk immediately forwarded the IRS Motion to Dismiss, the Kosachuk Motion to Dismiss as well as their respective notices of hearing to Attorney Jesse Harris.

28.     Mr. Kosachuk emailed Attorney Harris and urged him to join and adopt the pending Motions to Dismiss on behalf of the Estate of NLG.    Attorney Harris ignored the pending Motions to Dismiss in pursuant of his own agenda and settlement to the detriment of NLG's creditors.

29.     Mr. Kosachuk has also contacted the Trustee to authorize NLG's local counsel in Florida to file the Motion to Dismiss the Hazan Bankruptcy on behalf of the Trustee and this generous offer was also ignored.

30.     As mentioned above, NLG's foreclosure has been stymied by the sham Judgment by Confession, the Hazan bankruptcy in Florida and Hazan's vexatious bad faith litigation campaign.    Upon vacatur of the Judgment by Confession or upon dismissal of the Hazan Bankruptcy, NLG's Final Judgment of Foreclosure will be reinstated by operation of bankruptcy law.

31.     Thereafter, NLG will be able to pay all of its creditors in full and distribute the remaining proceeds to the unit holder of NLG. Those claims total approximately $8 million and include the claim of the petitioning creditor.

32.     The owner of NLG and the majority of its creditors support this Motion to Convert.

33.     Upon conversion to Chapter 11, NLG intends file a consensual plan and seek confirmation. The votes necessary to confirm the plan are already in place.

34.     NLG and Movant will also immediately move forward with the pending adversary proceeding under case number 22-ap-50086-JKS.

## RELIEF REQUESTED

Movant seeks entry of an Order under section 706(a) of the Bankruptcy Code, converting the Debtor's bankruptcy case under Chapter 7 of the Bankruptcy Code to one under Chapter 11 of the Bankruptcy Code, so that the Debtor may regain possession of its assets and estate, finalize its pending litigation in Florida and New York, where NLG's lawyers are better positioned and more familiar than the Trustee (and his lawyers) and restructure itself though a chapter 11 proceeding, which will maximize value for the Debtor's creditors and the Debtor as a whole.

## BASIS FOR RELIEF

Section 706 of the Bankruptcy Code governs the conversion of a Chapter 7 case to one under Chapter 11 and provides, in pertinent part, as follows:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>
> . . .
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. § 706

The statutory text and the legislative history[3] of Section 706 indicate that a Chapter 7 debtor has an absolute right to convert a case to a Chapter 11 case. The Supreme Court, in

---

[3] "Subsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right.

*Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373 (2007), determined that a case should be converted under section 706(a) unless the bankruptcy court determines that section 706(d) prohibits the debtor from being a debtor under the chapter of the Bankruptcy Code to which the debtor seeks to convert its case. *See id.* at 372; *see also id.* at 374 ("In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct . . . is tantamount to a ruling that individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect.").

Although *Marrama* involved a conversion from Chapter 7 to Chapter 13, numerous bankruptcy courts have held that *Marrama* also applies to motions to convert to Chapter 11. *See, e.g., In re Premier Gen. Holdings, Ltd.*, 427 B.R. 592, 601 n.8 (Bankr. W.D. Tex. 2010) (indicating that there is "little reason to confine the Court's ruling in *Marrama* to the Chapter 13 context); *In re Broad Creek Edgewater, LP*, 371 B.R. 752, 758 (Bankr. D.S.C. 2007) ("[T]his Court believes that *Marrama* applies to motions to convert to Chapter 11.")

As a result, bankruptcy courts since *Marrama* have held that the initial burden of proof in a motion to convert under 11 U.S.C. § 706(a) is on the debtor, with the burden thereafter shifting to an objecting party to prove ineligibility:

> The burden of proof on the motion to convert is on the debtor. The debtor must first make a *prima facie* case for conversion (showing that there has been no prior conversion of the case, that the debtor is eligible for relief under § 109 [of the Bankruptcy Code], and that conversion is to achieve a purpose permitted under the proposed Chapter). The burden of coming forward with evidence then shifts to the objecting parties to show that the debtor is not eligible for relief under *Marrama*.

---

The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable." S. Rep. No. 95-989, at 94 (1978); *see also* H.R. Rep. No. 95-595, at 380 (1977) (using nearly identical language).

*In re Broad Creek Edgewater, LP*, 371 B.R. at 757; *see also In re FMO Associates II, LLC*, 402

B.R. 546, 551 (Bankr. E.D.N.Y. 2009) (internal citation omitted) (stating that an objecting party

bears the burden of demonstrating, by a preponderance of the evidence, why a debtor should not

be permitted to convert its case to Chapter 11 pursuant to section 706(a)).

      In this case, the Debtor is absolutely entitled to convert its case to one under Chapter 11 of

the Bankruptcy Code.  First, this case has not been previously converted.  Second, the Debtor (i)

is a "person" eligible to be a Chapter 11 debtor under section 109 of the Bankruptcy Code, as the

Debtor is a "corporation" within the meaning of section 101(9) of the Bankruptcy Code, (ii) has

its principle place of business in the United States, and (iii) is domiciled in the United States.

Finally, the Debtor's goal in converting this case to Chapter 11 is to reorganize its business debts

and maximize the return to its creditors (through restructuring), which is the fundamental purpose

of a Chapter 11 case.  Therefore, the Debtor has the statutory right to convert this case.

      Unless the Court directs otherwise, a hearing is not required, as the Motion is not

considered a contested matter and the only issue to be determined - whether the Debtor is eligible

for relief under Chapter 11 - is readily apparent from the record.  *See In re Premier Gen.*

*Holdings, Ltd.*, 427 B.R. at 600-601 (Bankr. W.D. Tex. 2010) (citing Fed. R. Bankr. P.

1017(f)(2)) ("[T]he Rules contemplate that, while a conversion under section 706 is

accomplished by motion, it is not a contested matter, and a court may rule on the motion

without a hearing."); *In re Rossen*, No. 99-10383, 2000 WL 34448606, at *2 (Bankr. D. Vt.

July 11, 2000) (quoting 6 Collier on Bankruptcy, ¶ 706.07 (15th ed.1999)) ("[I]f conversion is

sought pursuant to section 706(a), the motion to convert is not considered a contested matter,

since the only possible issues are whether the case has been previously converted and whether

the debtor is eligible [pursuant to § 109] for relief under the chapter to which the debtor seeks to

**Page 11 of 14**

convert."); *Matter of Omaha Midwest Wholesale Distributors, Inc.*, 94 B.R. 160, 162 n. 2 (Bankr. D. Neb. 1988) ("[A] hearing is not required for conversion pursuant to Section 706(a)."); *see also* Fed R. Bankr. P. 1017, Advisory Committee Note (1987), reprinted in 11 Norton Bankr. L. & Prac. 3d Fed. R. Bankr. P. 1017 ("[N]o hearing is required on these motions unless the court directs.")

## **CONCLUSION**

WHEREFORE, for all the foregoing reasons, the Movant seeks entry of an order, proposed order granting the Motion attached hereto as Exhibit 1, converting this bankruptcy case to a case under Chapter 11 of the Bankruptcy Code and granting such other and further relief as the Court deems just and proper.

Dated August 16, 2022

Respectfully submitted,

Chris Kosachuk
*Pro Se Movant*
854 Pheasant Run Rd.
West Chester, PA 19382-8144
(305) 490-5700
chriskosachuk@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of August 2022 a true and correct copy of the foregoing was hand delivered to the Clerk of Court for electronic filing, which will electronically serve a copy of the foregoing document on all parties of record and was emailed directly to counsel of record by Movant.

Respectfully submitted,

Chris Kosachuk
*Pro Se Movant*
854 Pheasant Run Rd.
West Chester, PA 19382-8144
(305) 490-5700
chriskosachuk@gmail.com

## <u>SERVICE LIST</u>

***Served via CM/ECF***

All parties of record

**EXHIBIT 1**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

In re:                                             Case No. 21-11269-JKS

NLG, LLC                                      Chapter 7


          Debtor,
_____/

**ORDER GRANTING MOTION TO CONVERT INVOLUNTARY CHAPTER 7 CASE
TO VOLUNTARY CHAPTER 11 CASE**

This matter having been presented to the Court upon the *Motion to Convert Involuntary Chapter 7 Case to Voluntary Chapter 11 Case,* seeking an Order under 11 U.S.C. § 706(a), converting this Chapter 7 bankruptcy case to a case under Chapter 11 of the Bankruptcy Code (the "Motion") [D.I. __]; and the Court having jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b); and the Court having considered the Motion and any objection thereto; and for good cause shown,

          **IT IS HEREBY ORDERED** that:

1. The Motion is GRANTED as set forth herein.

2. The Debtor's Chapter 7 bankruptcy case is hereby converted to a bankruptcy case under Chapter 11 of the Bankruptcy Code.



Dated:_____
Wilmington, DE                              _____
                                                      J. Kate Stickles
                                                      United States Bankruptcy Judge