## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NLG, LLC,<br><br>    Debtor. | Chapter 7<br><br>Case No. 21-11269 (JKS)<br><br>Related D.I. 71, 92, 134, 135, and 136 |

### OPINION

Before the Court is Chris Kosachuk's ("Kosachuk") *Motion to Convert Involuntary Chapter 7 Case to Voluntary Chapter 11 Case* (the "Conversion Motion")[1] pursuant to 11 U.S.C. § 706(a) and rule 1017 of the Federal Rules of Bankruptcy Procedure.  Having carefully reviewed the motion, the responses, the facts of this case, and arguments presented, for the reasons set forth below, the Conversion Motion will be denied.

### JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Consideration of this matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

#### A.  The Involuntary Bankruptcy Case

On September 24, 2021, Kosachuk filed an involuntary petition for relief under chapter 7 of title 11 of the Bankruptcy Code against NLG, LLC (the "Debtor" or "NLG").  Kosachuk, the

---

[1] D.I. 71.

founder of NLG, was the sole petitioning creditor.  NLG did not answer the involuntary petition.

No party objected to, moved to dismiss, or otherwise challenged the involuntary petition.  On

January 7, 2022, the Court entered the Order for Relief in an Involuntary Case ("Order for

Relief").[2]

On the same day, the United States Trustee appointed Alfred T. Giuliano as the interim

chapter 7 trustee (the "Trustee"), which appointment remains in effect.[3]  The Trustee is now the

sole fiduciary for NLG and is responsible for recovering all assets of the estate and prosecuting

causes of action on behalf of the estate.[4]

On February 9 and 10, 2022, the Trustee filed Debtor's Schedule of Assets and Liabilities

and Statement of Financial Affairs, respectively.[5]

On March 3, 2022, the Court entered an Order authorizing the Trustee to retain Fox

Rothschild LLP ("Fox Rothschild") as his counsel.[6]

On August 16, 2022, Kosachuk filed the Conversion Motion.[7]

---

[2] D.I. 10.

[3] D.I. 12.

[4] *Mini-Miners, Inc. v. Lansberry (In re Lansberry)*, 177 B.R. 49, 55 (Bankr. W.D. Pa. 1995) ("With his appointment, the chapter 7 trustee in the above cases became the sole representative of debtors' estates.  As trustee, he became the successor-in-interest to all pre-petition causes of action belonging to debtors." (citations omitted)). *See also Bauer v. Com. Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 441 (6th Cir. 1988) ("It is well settled that the right to pursue causes of action formerly belonging to the debtor—a form of property under the Bankruptcy Code—vests in the trustee for the benefit of the estate." (citations and quotation marks omitted)); *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir. 1987) ("Any of these actions that are unresolved at the time of filing then pass to the trustee as representative of the estate, who has the responsibility under Section 704(1) of asserting them whenever necessary for collection or preservation of the estate." (citations omitted)).

[5] *See* D.I. 24 and 27, respectively (collectively "Schedule and Statement").

[6] D.I. 39.

[7] The Conversion Motion was heard after the filing fee was paid and the motion scheduled by Order entered on December 19, 2022. *See* D.I. 121.

On November 2, 2022, creditor Juan Ramirez ("Ramirez") filed a declaration in support of the Conversion Motion.[8]

On December 19, 2022, the Trustee filed the *Notice of Change from Asset to No Asset*[9] (the "Notice of No Asset") and the *Chapter 7 Trustee Report of No Distribution* (the "Trustee's Final Report").[10]  The Trustee's Final Report states, in part:

> I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed. R. Bank. P. 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered.  I request that I be discharged from any further duties as trustee.  Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 15 months. Assets Abandoned (without deducting any secured claims): $ 0.00, Assets Exempt: Not Available, Claims Scheduled: $ 0.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 0.00.[11]

No response or opposition was filed to the Trustee's Final Report.[12]

On January 24, 2023, three responses were filed to the Conversion Motion: (i) Liza Hazan ("Hazan"),[13] (ii) Selective Advisors Group, LLC ("Selective"), 9197-5904 Quebec, Inc.

---

[8] *Declaration in Support of Creditor Juan Ramirez of Motion to Convert Involuntary Chapter 7 Case to Voluntary Chapter 11 Case*, D.I. 92.

[9] D.I. 120.

[10] D.I. 122.

[11] D.I. 122 (cleaned up).

[12] Fed. R. Bankr. P. 5009 provides: "If in a chapter 7 . . . case the trustee has filed a final report and final account and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered."

[13] *Liza Hazan's Response to Motion to Convert*, D.I. 134.  Although the Court permitted Hazan to present argument, because Hazan is not a creditor of the Debtor and does not have standing in this proceeding the Court does not consider Hazan's argument in rending this Opinion.  *Allen v. Joseph (In re Hawkins)*, 513 B.R. 634, 638 (D. Del. 2013), *aff'd*, 594 Fed. App'x 71 (3d Cir. 2015) (only persons whose rights or interests are directly, and

("Quebec"), and America Asset Management, LLC ("AAM") (Selective, Quebec and AAM are referred to as the "Objector(s)");[14] and (iii) Fox Rothschild, the holder of an administrative expense claim against the estate of NLG.[15]

On January 31, 2023, the Court heard oral argument on the Conversion Motion and took the matter under advisement.

**B.     The Adversary Proceedings in the Bankruptcy Case**

In 2002, Kosachuk formed NLG to facilitate the sale of real property located in Fisher Island, Florida (the "Property") to Hazan by which NLG lent money to Hazan in exchange for a promissory note and mortgage.  Soon thereafter, Hazan defaulted on the mortgage.

In 2012, in an unrelated matter, the Supreme Court for the State of New York in *9197-5904 Quebec, Inc. v. NLG, LLC*, Case No. 2012-101875, entered a judgment by confession against NLG in favor of Quebec (the "Quebec Judgment").  Litigation ensued when the Quebec Judgment was offset against the promissory note given by Hazan.[16]  This dispute has been the

---

adversary affected pecuniarily are a "person aggrieved" with standing); *In re AbitibiBowater Inc.*, No. 09-11296 KJC, 2010 WL 4823839, at *8 (Bankr. D. Del. Nov. 22, 2010) (matter must directly or adversely affect the pecuniary interests in order to have standing to object).  Even if Hazan has standing, the Court's decision would not be altered.

[14] *Opposition by Selective Advisors Group, LLC, 9197-5904 Quebec, and American Asset Management, LLC to Motion to Convert Involuntary Chapter 7 Case to Voluntary Chapter 11 Case*, D.I. 135.

[15] *Response of Fox Rothschild LLP to Motion to Convert Involuntary Chapter 7 Case to Voluntary Chapter 11 Case*, D.I. 136.

[16] At the January 31, 2023, hearing on the Conversion Motion, counsel for Selective, Quebec, and AAM explained that Hazan was married to Mr. Meehan, who is a principal of Selective, Quebec, and AAM.  Adv. D.I. 141 (Tr. of Hr'g Jan. 31, 2023, 16:9-10 and 16:16-21).

subject of numerous lawsuits between the Debtor, Kosachuk, Hazan, Selective, and Quebec, in state and federal courts for more than a decade.[17]

The filing of the involuntary bankruptcy created yet another forum to continue what is essentially a two-party dispute. Significantly, since the filing of this case, three separate adversary proceedings have been commenced in this Court challenging the Quebec Judgment: (i) in the first, Kosachuk asserts NLG's assets were misappropriated by Selective using the "sham" Quebec Judgment;[18] (ii) in the second, NLG seeks a declaratory judgment that the Quebec Judgment is a "sham" and a declaration that the Quebec Judgment be vacated, set aside, and stricken;[19] and (iii) in the third, Kosachuk seeks to cancel the indebtedness caused by the Quebec Judgment, *nunc pro tunc* to the date of entry January 22, 2012.[20] In effect, the three adversary proceedings seek essentially the same relief -- namely, declarations that the Quebec Judgment, a judgment entered in 2012 by the New York state court, is void.

## C.    Proofs of Claim Filed in the Bankruptcy Case

Since the Order of Relief was entered, seven (7) proofs of claim have been filed in this case by four claimants, including: two claims filed by Ramirez for unpaid legal services provided

---

[17] A comprehensive discussion of the state and federal litigation between NLG and/or Kosachuk and Hazan, Selective, and Quebec, including the various court rulings, is set forth in this Court's Opinion in *Kosachuk v. Selective Advisors Group, LLC, et al.*, Adv. Pro. No. 22-50421 (JKS), entered February 16, 2023.

[18] *Kosachuk v. 9197-5904 Quebec, Inc.*, Adv. Pro. No. 21-51264.

[19] *NLG, LLC v. Selective Advisors Group, LLC*, Adv. Pro. No. 22-50086. This action was filed in 2018 in the United States District Court for the Southern District of Florida and transferred to this Court. The parties have agreed to dismiss this adversary proceeding over the objection of non-parties Kosachuk and Ramirez. Adv. Pro. No. 22-50086, Adv. D.I. 60.

[20] *Kosachuk v. 9197-5904 Quebec, Inc. and Selective Advisors Group, LLC*, Adv. Pro. No. 22-50421. This adversary is the subject of a pending motion to dismiss.

to NLG;[21] two claims filed by Kosachuk, one related to money loaned to NLG which was then loaned to Hazan and the other related to the foreclosure action against the Property;[22] one claim filed by Objector AAM, a judgment creditor;[23] and two claims filed by Grove Resolutions, LLC, for legal services provided to NLG.[24]  No claims objections were filed; per the Trustee's Final Report, no claims will receive any distribution.

## THE PARTIES' ARGUMENT

Kosachuk seeks entry of an order under section 706(a) of the Bankruptcy Code converting NLG's chapter 7 bankruptcy case to a case under chapter 11 of the Bankruptcy Code. He argues that section 706(a) and case law give the Debtor a one-time absolute right of conversion because (1) the chapter 7 case has not been previously converted; and (2) the Debtor is eligible to be a chapter 11 debtor under section 101(9) of the Bankruptcy Code.[25]  He seeks conversion so that "the Debtor may regain possession of its assets and estate, finalize its pending litigation in Florida and New York, where NLG's lawyers are better positioned and more familiar than the Trustee (and his lawyers) and restructure itself [through] . . . a chapter 11 proceeding, which will maximize value for the Debtor's creditors and the Debtor as a whole."[26] At oral argument, Kosachuk argued that "[conversion] will provide the highest possible return to all creditors of the estate of NLG, including the potential administrative claim...."[27]

---

[21] POC 4-1 and 5-1.

[22] POC 6-1 and 7-1.

[23] POC 2-1.

[24] POC 1-1 and 3-1.

[25] *See* 11 U.S.C. § 101(9). D.I. 71 at p. 9

[26] D.I. 71 at p. 9.

[27] D.I. 141 (Tr. of Hr'g, Jan. 30, 2023, 8:9-11).

In opposition to the Conversion Motion, the Objectors argue that NLG is ineligible to be a debtor under chapter 11. Further, they argue a chapter 11 conversion would have all the hallmarks of a bad-faith filing because the Debtor has nothing to reorganize, uses bankruptcy as a litigation tactic and for forum shopping, is being used to resolve what is essentially a two-party dispute, and has few unsecured creditors.[28] At oral argument, counsel for the Objectors argued that the real purpose for the conversion is to address the underlying two-party dispute between Kosachuk and Hazan.[29]

## APPLICABLE LAW

Section 706(a) of the Bankruptcy Code provides, in part, that "[t]he debtor may convert a case under this chapter to a case under chapter 11 … at any time, if the case has not been converted under section 1112 … of this title."

Under section 706(b) of the Bankruptcy Code, "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." "Section 706(b) does not provide guidance on what (or what not) to consider when reaching a decision."[30] Courts have therefore concluded that a bankruptcy court has "broad discretion in exercising this power based on a determination of what 'will most inure to the benefit of all parties in interest.'"[31] "Since there are no specific grounds for conversion, a

---

[28] D.I. 135 at ¶ 10.

[29] D.I. 141 (Tr. of Hr'g, Jan. 30, 2023, 16:16-21) ("This, really, from the beginning, was, essentially, a two-party dispute that was then brought to the Bankruptcy Court to try and find another forum to settle a dispute between Mr. Kosachuk and Ms. Hazan and certain entities owned by Mr. Meehan, that I represent.").

[30] *Decker v. Off. of the United States Tr.*, 548 B.R. 813, 817 (D. Alaska 2015) (citation omitted).

[31] *In re Parvin*, 549 B.R. 268, 271 (W.D. Wash. 2016) (citations omitted) ("*Parvin II*").

court should consider anything relevant that would further the goals of the Bankruptcy Code."[32]
Courts have considered a variety of factors in determining whether to convert a case from
chapter 7 to chapter 11 under section 706(b), depending on the circumstances of the case,
including: (1) the debtor's ability to repay the debt; (2) whether there are immediate grounds for
reconversion; (3) the likelihood of a chapter 11 plan's confirmation; and (4) whether the parties
in interest would benefit from conversion.[33]

The burden of proof is on the moving party to show that the case should be converted.[34]

## ANALYSIS

### A.    Kosachuk Does Not Have an Absolute Right to Convert the Case

Kosachuk's principal argument is that the Debtor has a one-time absolute right to convert
its chapter 7 case to a chapter 11 case under section 706(a) of the Bankruptcy Code.[35]
Kosachuk's argument fails under the plain language of the statute and the controlling law.

First, section 706(a) provides, in part, that "**the debtor may convert a case** under this
chapter to a case under chapter 11 ... ."[36] Here, the Debtor (or the Trustee who stands in the
shoes of the Debtor and is the fiduciary for the Debtor) is not seeking to convert the case.  Under
the plain language of the statute, section 706(a) applies to a debtor seeking conversion, not a
creditor or other party in interest.  Therefore, Kosachuk, a non-debtor, cannot seek conversion

---

[32] *Id.* (citations omitted).

[33] *Decker*, 548 B.R. at 817; *see also Parvin II*, 549 B.R. at 271-72 ("the debtor's ability to pay his creditors is typically the first consideration"); *Gebhardt v. Hardigan (In re Hardigan)*, 517 B.R. 379 (S.D. Ga. 2014).

[34] *In re Parvin ("Parvin I")*, 538 B.R. 96, 101 (Bankr. W.D. Wash. 2015).

[35] D.I. 71 at p. 11.

[36] 11 U.S.C. § 706(a) (emphasis added).

under section 706(a).[37]  On the other hand, section 706(b) empowers "a party in interest" other than a debtor to seek conversion.  Although, Kosachuk did not seek relief under section 706(b), the Court will address the issue below.

Second, even if Kosachuk could seek relief on behalf of the Debtor, section 706(a) does not give the Debtor the absolute right to convert the chapter 7 case to a case under chapter 11.  In *Marrama v. Citizen's Bank,* the Supreme Court held that a debtor's right to convert a chapter 7 case to another chapter is not absolute.[38]  Case law instructs that section 706(a) cannot be read in isolation but rather must be read in conjunction with section 706(d).[39]  "Reading sections 706(a) and 706(d) together operates to condition a debtor's right to convert under certain circumstances."[40]

Conversion under section 706(a) is limited by the express language of section 706(d), which provides that "a case may not be converted to a case under another chapter of this title **unless the debtor may be a debtor under such chapter.**"[41]  Here, the Debtor's right to convert is expressly conditioned on NLG satisfying the requirements of the destination chapter – chapter

---

[37]  Kosachuk filed the Conversion Motion as a "*pro se* movant."  *See* D.I. 71 and 141 (Tr. of Hr'g Jan. 31, 2023, 27-12-16).  *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) (citations omitted) ("It has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel."); *In re 69 N. Franklin Tpk.*, LLC, 693 Fed. App'x 141, 144 (3d Cir. 2017) (citations omitted) ("It is well established that a corporate entity such as a limited liability company may not proceed *pro se* and must be represented by legal counsel.").  There is a distinction between Kosachuk and NLG – they are not one and the same, although they are in privity. *Burtch v. Opus, LLC (In re Opus E., LLC)*, 528 B.R. 30, 57 (Bankr. D. Del. 2015), *aff'd sub nom. In re: Opus E., LLC*, No. 09-12261, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd sub nom. In re Opus E. LLC*, 698 F. App'x 711 (3d Cir. 2017) ("The corporate identity for single-member LLCs is also respected.").

[38]  *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 372 (2007).

[39]  *See Marrama,* 549 U.S. at 371; *In re Murray*, 377 B.R. 464, 468 (Del. Bankr. 2007).

[40]  *In re Murray*, 377 B.R. at 468.

[41]  11 U.S.C. § 706(d) (emphasis added).

11.[42] Kosachuk has failed to carry his evidentiary burden of proving entitlement to conversion under chapter 11.

A debtor may not qualify as a "debtor" under chapter 11, if pursuant to 11 U.S.C. § 1112(b)(1), "cause" exists for the court to convert a debtor's chapter 11 case to a chapter 7 case or dismiss it. In deciding a contested motion to convert under section 706(a), with sections 706(d) and 1112(b)(4) in mind, courts consider the "totality of the circumstances," including the factors set forth in 1112(b)(4).[43] The Court of Appeals for the Eleventh Circuit explained in *Daughtrey v. Rivera* (considering conversion from a chapter 7 to a chapter 11 case):

> A court "*shall* convert" a case under Chapter 11 to Chapter 7 or dismiss it, whichever is in the best interests of creditors and the estate, *for cause*. A *non-exhaustive* list of "causes" includes, among other things, substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, or a debtor's inability to effectuate substantial consummation of a confirmed plan.
>
> . . . Thus, § 706(d) "provides adequate authority" to deny a motion to convert to Chapter 11 when "cause" exists under § 1112(b)(4). If, as Debtors argue, conversion to Chapter 11 must occur before § 1112(b)(1) comes into play, it means that the bankruptcy court must go through the formality of granting conversion and then, in the next breath, dismiss the case or convert it to a Chapter 7. This would place form over substance and defy common sense.[44]

---

[42] *Marrama*, 549 U.S. at 372 (2007) (The broad description of the right to convert as "absolute" in Senate and House Committee Reports fails to give full effect to the express limitation of § 706(d), which provides that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." That text expressly conditioned Marrama's right to convert on his ability to qualify as a chapter 13 "debtor.").

[43] *Nimoityn v. Schubert (In re Nimoityn)*, No. 21-CV-02709, 2022 WL 523601, at *1 (E.D. Pa. Feb. 22, 2022) (considering converting a chapter 7 case to a case under chapter 11).

[44] *Daughtrey v. Rivera (In re Daughtrey)*, 896 F.3d 1255, 1275-76 (11th Cir. 2018) (emphasis supplied; citations and quotations marks omitted).

Here, at least two section 1112(b)(4) "causes" exist for denying conversion to chapter 11: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and "inability to effectuate substantial consummation of a confirmed plan."[45]

As described herein, the Debtor's Schedule and Statement reflect that NLG has no funds or any source of income. After investigation, the Trustee determined that NLG does not have property available for distribution to creditors and declared this chapter 7 case a "no asset" case.[46] The Trustee's findings are uncontested. Further, during this chapter 7 case the Debtor has experienced continuing loss having incurred an administrative expense claim for legal fees that it cannot pay.[47] Kosachuk claims that "finalizing litigation in Florida and New York" will lead to payment in full of all claimants.[48] The Court, however, is skeptical. Both the New York and Florida state courts and the Second and Eleventh Circuit Courts of Appeals have ruled that the Quebec Judgment is no longer subject to challenge.

The Debtor has no assets. The estate is administratively insolvent. The Debtor does not have the financial ability to fund a chapter 11 case or a plan process. The Debtor does not have any assets to distribute to creditors under a plan. The Debtor cannot be rehabilitated. As a result, this Court finds that it is unlikely the Debtor can confirm or consummate a feasible

---

[45] 11 U.S.C § 1112(b)(4)(A), (M).

[46] *See* D.I. 120 and 122.

[47] D.I. 136.

[48] *See* D.I. 71 at p. 9 and D.I. 141 (Tr. of Hr'g Jan. 31, 2023, 26:10-24).

chapter 11 plan. Consequently, under section 706(d), the Debtor does not qualify as a chapter 11 debtor and the case cannot be converted to a case under chapter 11.

The request to convert under section 706(a) is denied.

**B.    Conversion is Inappropriate under Section 706(b)**

Although Kosachuk did not specifically seek relief under section 706(b), the Court will consider whether conversion is appropriate under section 706(b) of the Bankruptcy Code. The Court considers the following factors:

### i.    The Debtor's Ability to Repay the Debt

In deciding a motion to convert a case under chapter 7 to chapter 11 upon request of a party in interest, the "debtor's ability to pay typically is a starting point in the analysis, … since the whole reason for asking [for] a case to be converted is the assumption that creditors would receive more in a chapter 11 than a chapter 7."[49]

After fifteen months in chapter 7 and due inquiry, having discovered no assets for distribution, the Trustee, an independent fiduciary, declared this chapter 7 case a "no asset" case.[50] The Trustee's Final Report[51] states there is no property available from the estate to distribute to creditors – this report was not contested. Under Bankruptcy Rule 5009 there is a presumption that the estate is fully administered.

---

[49] *Parvin I,* 538 B.R. at 102 (citations omitted). *See also In re Decker,* 535 B.R. at 839 (Bankr. D. Alaska 2015), *aff'd sub nom. Decker v. Off. of the United States Tr.,* 548 B.R. 813 (D. Alaska 2015) (the ability to pay "is an exceedingly relevant, if not necessary, factor and the obvious starting point for any analysis under § 706(b).").

[50] *See* D.I. 120 and 122.

[51] D.I. 122.

The Debtor's Schedule of Assets and Liabilities reflects that the Debtor does not have any real property, personal property, cash, cash equivalents, or financial assets, deposits or prepayments, accounts receivable, investments, inventory, furniture, fixtures and equipment or collectibles, machinery, equipment or vehicles, or intellectual property.[52] The Statement of Financial Affairs reports that NLG has no income.[53] The record is devoid of any evidence establishing that the Debtor is an operating business, has any source of income, or other assets from which to administer a chapter 11 case, fund a chapter 11 plan or make distributions to creditors. Kosachuk has not provided any evidence that the Debtor can pay its debts. In fact, the Trustee's Final Report states the Debtor cannot.

At the October 25, 2022 hearing on a proposed settlement between the Trustee and Hazan, the Trustee confirmed, following his investigation, what is contained in the Debtor's Schedule and Statement – there are no "meaningful assets."[54] Following the fallout of the proposed settlement,[55] on December 19, 2022, the Trustee filed the Notice of No Asset, designating this case as a "no asset" case.

In addition, the Debtor's estate has accrued an administrative expense claim for legal fees in the chapter 7 case, in the approximate amount of $190,000.[56] The estate has no funds, or

---

[52] D.I. 24.

[53] D.I. 27.

[54] D.I. 95 (Tr. Hr'g Oct. 25, 2022, 10:8-14)("A: I'm serving as the Chapter 7 bankruptcy trustee. At this point in time, I'm liquidating what little assets there are, and then we'll examine claims and file a final report. Q: Okay. And are there any other possible assets other than these potential claims? A: Not meaningful assets, no.").

[55] The Trustee explained that if the proposed settlement did not happen (which it inevitably did not), there would be "no money to pay professionals, to pay attorneys, so it will...end up as a no-asset case..." D.I. 95 (Tr. Hr'g Oct. 25, 2022, 15:19-24).

[56] D.I. 136.

potential income, from which to pay this administrative expense or creditor claims; the estate is administratively insolvent.

Kosachuk maintains that the estate assets spring from litigation and that the purpose of conversion would be to "finalize [NLG's] pending litigation in Florida and New York."[57] This argument fails. First, there are no estate resources to fund a chapter 11 bankruptcy process, let alone pursue litigation. Second, the litigation that Kosachuk wants the Debtor to pursue is essentially a two-party dispute involving non-bankruptcy, state law issues that have been adjudicated in various state and federal courts.

### ii.    Whether there are Immediate Grounds for Reconversion

As a practical matter, if this case were converted to a chapter 11 case, there would be no funds to pay (i) estate professionals and, under Delaware law, NLG would be required to retain counsel;[58] (ii) the quarterly United States Trustee fees imposed on all chapter 11 debtors under 28 U.S.C. § 1930; or (iii) any costs to administer the case. Consequently, there is a substantial likelihood of reconversion to chapter 7. Conversion would also add unnecessary layers of administrative procedure and costs on an estate that has no assets to administer and is administratively insolvent, and it would delay the final administration and closure of the chapter 7 estate. Conversion to chapter 11 would be futile.

---

[57] D.I. 71 at p. 9. As of the date of this Opinion, the Court is not aware of any litigation pending in either New York or Florida.

[58] *Rowland*, 506 U.S. at 201–02 (citations omitted); *In re 69 N. Franklin Tpk.*, LLC, 693 Fed. App'x at 144 (citations omitted).

In addition, in considering whether to reconvert a chapter 11 case to chapter 7, courts consider "cause," under section 1112(b)(4) of the Bankruptcy Code.[59]  As explained above, at least two section 1112(b)(4) "causes" exist for denying conversion to chapter 11: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and "inability to effectuate substantial consummation of a confirmed plan."[60]

First, there is continuing loss to the estate that is already insolvent.  Specifically, as noted above, the Debtor has incurred an approximate $190,000 administrative expense claim in the chapter 7 case for which the estate has no funds to pay.

Second, there are no funds to administer a chapter 11 case or to confirm and consummate a feasible plan.  There is nothing to distribute to creditors and, as a result, no reasonable likelihood of rehabilitation or confirmation and consummation of a plan.

### iii.    The Likelihood of a Chapter 11 Plan's Confirmation

Third, there are both practical and legal issues making it unlikely the Debtor could confirm or consummate a plan in this case.  Practically speaking, Kosachuk has not presented any evidence establishing that the Debtor has the financial wherewithal to finance a chapter 11 case or a plan process.  Indeed, the Schedule and Statement show no liquidity.  Legally, the record reflects that there are no assets to reorganize or distribute under a plan of reorganization or liquidation.  Kosachuk premises confirmation of a plan on litigation surrounding a 2012 New York state court judgment, however, the record establishes that NLG and/or Kosachuk have been

---

[59]  11 U.S.C. § 1112(b)(4); *see, e.g., S. River Cap., LLC v. Kane*, No. 21-CV-03493-WHO, 2022 WL 2905354, at *6 (N.D. Cal. July 22, 2022).

[60]  11 U.S.C § 1112(b)(4)(A), (M); *see, e.g., S. River Cap., LLC v. Kane*, No. 21-CV-03493-WHO, 2022 WL 2905354 at *7.

pursuing litigation related to the 2012 Quebec Judgment for more than a decade without success. There is no indication that continued or additional litigation would be successful or result in a financial recovery for the estate to fund a plan process and distributions to creditors. In fact, the Trustee's determination, after investigation, that this is a no asset case is contrary to Kosachuk's unsubstantiated argument. As the Third Circuit noted in *In re Am. Capital Equip., LLC,* this Court "is not bound to clog its docket with visionary or impracticable schemes for resuscitation."[61]

Moreover, in deciding whether to confirm a chapter 11 plan, the court is required to consider a plan's feasibility: whether confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor."[62] Here, even if a plan were filed, it would not be feasible since there are no assets for distribution and it would likely be followed by liquidation.

### iv.    Whether the Parties in Interest Would Benefit from Conversion

Fourth, it is questionable whether any party in interest would benefit from conversion, other than possibly Kosachuk and Ramirez who want to continue to pursue litigation involving non-bankruptcy, state law issues that have been adjudicated in other state and federal forums.[63] Creditor AAM and litigation parties Quebec and Selective oppose conversion. Fox Rothschild, an administrative claimant, does not take a position but points out that it must be paid under any confirmed chapter 11 plan. Conversion to chapter 11 would be of no benefit to other creditors

---

[61] *In re Am. Capital Equip., LLC,* 688 F.3d 145, 162 (3d Cir. 2012) (citations omitted).

[62] *See* 11 U.S.C. § 1129(a)(11).

[63] *See* Opinion entered on February 16, 2023, in Adv. Pro. No. 22-50421 (JKS) addressing the two-party litigation.

and litigants as they would be required to continue to monitor a bankruptcy case with little, if any, upside.  The Court considers this factor neutral in its analysis.

**v.    Whether Conversion Would Abuse the Bankruptcy Process and Would Serve to Pervert, Rather Than Implement, Congressional Policy**

In *Culp v. Stanziale*,[64] the Delaware District Court observed that the "Bankruptcy Court had power to deny conversion under Section 105(a) of the Bankruptcy Code to prevent an abuse of process" and, under section 105(a), empowers the Bankruptcy Court to "take any action or make any determination necessary or appropriate to prevent abuse of the bankruptcy process."[65] "A motion to convert can be abusive when it is filed to frustrate the bankruptcy process, rather than to implement the Congressional policy of repayment of creditors."[66]

Sixteen months ago, Kosachuk filed the involuntary petition against NLG "in order to stop the Miami-Dade County Sheriff from executing on NLG's assets"[67] (i.e., the Property).  He determined when signing the involuntary petition that NLG should proceed in a chapter 7 liquidation.  By filing the involuntary petition, Kosachuk created yet another forum to pursue litigation.  However, upon entry of the Order for Relief, the Trustee became the fiduciary for the Debtor and took over the prosecution of the prepetition lawsuits NLG had as of the date of

---

[64] *Culp v. Stanziale (In re Culp)*, 545 B.R. 827 (D. Del. 2016).

[65] *In re Culp*, 545 B.R. at 842 (quotation marks and internal modifications removed; citations omitted).

[66] *In re Murray*, 377 B.R. at 471.

[67] D.I. 71 at p. 2, ¶ 6.  Kosachuk takes the position that the Property is NLG's asset.  *See* D.I. 141 (Tr. of Hr'g Jan. 31, 2023, at 26:6-7 and 43:3-8).  However, the Bankruptcy Court for the Southern District of Florida and the Eleventh Circuit Court of Appeals found otherwise.  *NLG, LLC v. Horizon Hosp. Grp., LLC (In re Hazan)*, 10 F.4th 1244, 1247–48 (11th Cir. 2021) and *Hazan v. NLG, LLC (In re Hazan)*, Adv. Pro. 16-1439 (Bankr. S.D. Fla. 2016), Adv. D.I. 238.

filing.[68]  Now that the Trustee has determined that there are no assets for distribution, no

litigation to prosecute, and has certified that the estate has been fully administered, Kosachuk

seeks to convert the case to chapter 11 so that the Debtor can "regain possession of its assets and

estate, finalize its pending litigation in Florida and New York ... ."  The record, however,

establishes that the Debtor has no assets, nothing to reorganize, and nothing to distribute to

creditors.  The record also reflects that NLG and/or Kosachuk and Hazan, Selective, and Quebec

have a long history of litigation in multiple state and federal courts, including three adversary

proceedings in this Court, challenging essentially the same state law issues.  The Objectors argue

the bankruptcy process is used as "a litigation tactic, a forum shopping device and/or to resolve

what is essentially a two-party dispute."[69]  The Court agrees.

     The Supreme Court has identified two basic purposes of chapter 11: preserving the going

concern value of debtor's business and maximizing property available to satisfy creditor

claims.[70]  NLG is unquestionably not an operating business, does not have any source of income

or liquid assets; and therefore, has no going concern value to preserve in chapter 11 through

reorganization or liquidation.  Converting this case to chapter 11 to obtain tactical litigation

advantages is not within the legitimate scope of bankruptcy laws and would be an abuse of the

bankruptcy process.[71]  The Bankruptcy Court is not a forum to litigate two-party, non-

---

[68]  11 U.S.C. § 704(1); *see also In re Bowker*, 245 B.R. 192 (Bankr. D.N.J. 2000) ("The primary duty of the chapter 7 trustee is to 'collect and reduce to money property of the estate....' This power includes the right of the trustee to take over the prosecution of any prepetition lawsuits the chapter 7 debtor had as of the date of filing.") (citations omitted).

[69]  D.I. 135 at ¶ 10.

[70]  *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999); *see also In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004) (citing *203 N. LaSalle St. P'ship*).

[71]  *In re Integrated Telecom Express, Inc.*, 384 F.3d at 120.

bankruptcy, state court issues or to relitigate issues previously decided by other courts.[72]  Section

105(a) of the Code authorizes the Court to prevent this kind of abuse of the bankruptcy system

by denying a motion to convert.[73]

### CONCLUSION

For the reasons set forth herein, the Conversion Motion is denied.  An order will be

issued.

Dated: February 16, 2023

                                        _____

                                        J. Kate Stickles
                                        United States Bankruptcy Judge

---

[72] *See, e.g., In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009) (citations omitted) ("Courts generally abstain in two-party disputes where relief is available in a non-bankruptcy forum.  Resolution of these disputes has the potential to transform the bankruptcy process into a collective device, which it is not.").

[73] *Marrama*, 549 U.S. at 375 (concluding that the authority granted to bankruptcy judges under § 105(a) to take any action necessary to prevent an abuse of process "is surely adequate to authorize an immediate denial of a motion to convert filed under § 706").